FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ NOV 03 2008 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------X
UNITED STATES OF AMERICA,

        Plaintiff,

-against-

THE INCORPORATED VILLAGE OF
ISLAND PARK, et al.,

        Defendants.
----------------------------------------------X

MEMORANDUM AND ORDER
90 CV 992 (ILG)

GLASSER, United States District Judge:

The facts of this case and the determinations which have been made thus far have been extensively reported in 791 F. Supp. 354 (E.D.N.Y. 1992); 888 F. Supp. 419 (E.D.N.Y. 1995) (Island Park II); 1995 WL 669936 E.D.N.Y. 1995); 1996 WL 68330 (E.D.N.Y. 1996); 951 F. Supp. 372 (1997), familiarity with which is assumed. For the purpose of this proceeding it is necessary merely to note that by its decision of May 17, 1995, reported in 888 F. Supp. 419, the government's motion for summary judgment was granted against the Village of Island Park ("The Village"), and individuals referred to and identified therein as the "Village Defendants" and "Homeowner Defendants" declaring that the Village violated the False Claims Act, 31 U.S.C. §§ 33729 et seq. and its Fair Housing Act, 42 U.S.C. §§ 3601 et seq. through its maladministration of the section 235 program funded by the United States Department of Housing and Urban Development (HUD) 12 USCA 17152. In accordance with 28 U.S.C. § 636(b)(1)(B), the matter was referred to Magistrate Judge Gold to conduct hearings and submit findings of fact and recommendations with respect to the amount of any money damages and penalties due from the various defendants. After the conclusion of extensive discovery and fourteen days of hearings at which the parties presented fact and expert witnesses

and documentary evidence, Magistrate Gold issued a 70 page Report and Recommendation (R&R) reflecting a meticulous review of the evidence and a carefully considered and reasoned application of the law to the facts as he determined them to be.

In a letter dated August 11, 2008, the government advised that settlement agreements were reached with the defendants named therein and that the Village of Island Park was the only remaining defendant.

This Memorandum and Order will address:

1. The motion by the Incorporated Village of Island Park ("The Village") seeking reconsideration of the Court's May 17, 1995 Memorandum and Order (M&O) granting summary judgment against the Village for violation of the False Claims Act and the Fair Housing Act. See 888 F. Supp. 419 (E.D.N.Y. 1995).

2. The Village's objections to the Report and Recommendation issued by Magistrate Gold on monetary damages and injunctive relief.

3. The government's objection to that Report and Recommendation.

## I.     The Village's Motion for Reconsideration

The thrust of this motion is that at the time the Village argued the government's motion for partial summary judgment relevant information was unavailable to it due to the simultaneous prosecution of this civil action and a criminal investigation into the Village's administration of the § 235 Program of the National Housing Act, 12 U.S.C.A. § 17152. The information to which they claim to have been deprived included the files of the Nassau County Office of Housing which were seized by the FBI and which would reveal that:

a) The Village Board never authorized Harold Scully, the Village Clerk, to

2

administer the § 235 Program.

b) The Village Board never approved the residence preferences.

c) Scully never induced the Department of Housing and Urban Development (HUD) to enter into mortgage assistance contracts.

The Village also asserts that the deposition testimony of the original owners of the § 235 homes was not available until after the Court's M&O of May 17, 1995, because of the ongoing criminal investigation. That testimony, it contends, would have demonstrated that only five of the homeowners were pre-selected, calling into question many of the conclusions reached in that M&O.

In response to this motion, the government advises that contrary to the Village's assertions, it was not disadvantaged by the criminal investigation having at all times been in possession of or had access to every piece of evidence relevant to the government's motion for partial summary judgment. The government unequivocally declares that it delivered the files of the Nassau County Office of Housing and Intergovernmental Affairs to the Village by hand on April 25, 1990, and that the Village used certain documents from those files during deposition of witnesses in 1990 and 1991. The government also advised that the Village relied on at least one of those documents in a motion for summary judgment the Village filed on July 22, 1991. (Gov. Mem. in Opp. at 27-34).

### A. The Basis for the Motion

The Village's motion for reconsideration is sought pursuant to Rules 54(b) and 60(b) of the Fed. R. Civ. P. and "general equitable principles." Pursuant to Rule 54(b), as well as pursuant to its inherent powers, the Court has the authority to reconsider a

prior decision at any time before the entry of final judgment. Richman v. W.L. Gore & Assocs., Inc., 988 F. Supp. 753, 755 (S.D.N.Y. 1997). Rule 54(b) provides, in relevant part:

> [A]ny order . . . which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before entry of judgment adjudicating all the claims and the rights and liabilities of the parties.

Reconsideration of a decision will be given where there has been an intervening change in controlling law, the availability of new evidence, or a need to correct a clear error or prevent a manifest injustice. Fiore v. McDonald's Corp., Nos. 95 CV 2708, 96 CV 0376, 1996 WL 331090, at *1 (E.D.N.Y. June 12, 1996); Richman, *supra*.

The Village relied on all three bases as warranting reconsideration.

1. Intervening Change in Controlling Law.

Although not characterized as such, it claims entitlement to reconsideration for what it regards as a change in the law pertaining to the liability of municipalities under the False Claims Act or, alternatively, a need to correct an error. Reconsideration of that issue, it urges, would serve the interests of fairness and judicial economy (Village Recon. Mem. at 20). Principal reliance is placed by the Village on United States ex. rel. Graber v. City of N.Y., 8 F. Supp. 2d 343 (S.D.N.Y. 1998), which held that states are not "persons" subject to liability under the False Claims Act. Damages mandated by that Act, Graber reasoned, are exemplary because they substantially exceed the actual damages suffered by the United States and since public policy frowns upon assessing exemplary damages against municipalities, it follows, therefore, that they are not "persons" under the False Claims Act. Graber's view of the law in that regard was

4

disavowed by Cook County, Ill. v. United States ex. rel. Chandler, 538 U.S. 119 (2003), which decided that local governmental entities are "person[s]" within the meaning of and subject to suit under the False Claims Act.

2. Availability of New Evidence

(a) Harold Scully's Authority

To derive any comfort from this basis, the Village must demonstrate that the evidence was unavailable notwithstanding the exercise of due diligence to obtain it and the Court's declining to reconsider its prior decision will result in a manifest injustice. Tri-Star Pictures, Inc. v. Leisure Time Prods. B.V., No. 88 CV 9127 (DNE) 1992 WL 296314, at *5 (S.D.N.Y. October 6, 1992), aff'd. 17 F.3d 38 (2d Cir. 1994). The teaching of Tri-Star is worth noting:

> The Court's discretion to reconsider interlocutory orders is not without boundaries. The purpose of this authority is to prevent manifest injustice – not to provide frustrated litigants a forum in which to reiterate aged arguments. The law-of-the-case doctrine expresses the common sense proposition that litigants who have once had the opportunity fully and fairly to argue their claims should not lightly be granted a second opportunity to do so. Absent compelling justification, policy considerations demand that both litigants and the court be spared the delay and expense inexorably linked to reconsideration of a decision.

A reading of the court's May 17, 1995 M&O and the references to the record buttressing the facts recited in it and the law those facts required to be applied, makes the teaching of Tri-Star exquisitely applicable to the Village's Motion to Reconsider. The "new evidence" they claim they discovered regarding Harold Scully's authority to administer the § 235 Program is not new at all and to assert that it is, ignores the record that belies that claim. The assertion of that basis in support of this motion is, indeed, a

5

frustrated attempt by the Village to reiterate aged arguments. (Gov. Recon. Opp. Mem. 72-84).

(b) <u>Other Evidence Claimed to be New</u>

The other evidence claimed by the Village to be "new" is not merely unpersuasive, but in every case, unsupported and belied by the record or evidence which was plainly there to be had but either not pursued or consciously avoided. Brief mention will be made of those.

(1) <u>The Extent of Preselection</u>

The Village argues that new evidence reveals that only five rather than forty-four Village homeowners were given advance notice of the § 235 Program by Scully, evidence not available before due to the ongoing criminal investigation. No application was made by the Village, however, pursuant to Rule 56(f), for leave to obtain discovery from the original homeowners. It is interesting to note that Declarations by seventeen of those homeowners were submitted by the Village in support of this motion. The claim that the stay of discovery prevented obtaining those Declarations in opposition to the government's motion for partial summary judgment is unpersuasive. Although an application pursuant to Rule 56(f) was made by the Village, it did not seek such discovery. It stated, instead, that discovery was not needed as to the False Claims Act and was needed only on the question of whether racial animus infected the Village's administration of the § 235 Program. (Gov. Rec. Opp. Mem. at 60-62).

(2) <u>HUD's Reliance on Scully's Statements</u>

Evidence claimed to be new in this regard is not new at all. As the government makes plain, the exhibits submitted by the Village in support of its motion makes this

6

claim specious. See Gov. Recon. Opp. Mem. at 79-81; 888 F. Supp. at 438-39.

(3) Residence Preference Served a Legitimate Government Interest

The remarkable groundless assertion that giving preferences to Village residents in administering the § 235 Program served the legitimate interest of keeping young married couples in the Village given this Court's observation in 888 F. Supp. at 449 that "The Village Defendants have not even attempted to justify their practices as serving a bonafide government interest."

(4) New Evidence of AFHMB

The Village's assertion that it first discovered Affirmative Fair Housing Marketing Programs (AFHMPs) from other communities in Nassau County is without merit and questionably credible. See the Court's statements as to this at 888 F. Supp. at 466 in furtherance of that observation.

(5) Manifest Injustice Prevented

The Village's effort to sustain the claim that the Court's rejection of its request for reconsideration will work a manifest injustice to the Village and its "comparatively poor citizenry and indenture a community," is unpersuasive. It continues to assert that the government withheld evidence from the Court and submitted a misleading Local Rule 3(g) statement bent only upon prevailing in this lawsuit and measuring its success by the degree of hardship it can impose on the Village of Island Park. Def. Recon. Mem. at 93. In stark contrast to those assertions and more to the point, in its introductory sentence to this section of its Memorandum, the Village succinctly captures, perhaps more vividly, what 74 pages of the Court's opinions conveyed: "The court was profoundly offended by the government's portrayal of wholesale manipulation of the

7

Section 235 Program in Island Park."

### B. Rule 60(b) Fed. R. Civ. P.

Insofar as the Village also purports to proceed pursuant to Rule 60(b) that reliance is misplaced. That Rule provides in part:

> On motion and upon such terms as are just, the court may relieve a party . . . from a <u>final</u> judgment . . . (emphasis added).

The partial summary judgment granted the government in the May 17, 1995 M&O is not a final judgment. <u>See</u> <u>Sec. Pac. Mortgage and Real Estate Servs., Inc. v. Herald Center Ltd.</u>, 731 F. Supp. 605, 610 (S.D.N.Y. 1990) (for the purposes of 60(b) a grant of partial summary judgment is not final).

### C. Local Civil Rule 6.3

Local Civil Rule 6.3 provides:

> A notice of motion for reconsideration or reargument *of a court order determining a motion* shall be served within ten (10) days after *the entry* of the court's determination of the original motion, *or in the case of an order resulting in a judgment, within ten (10) days after the entry of the judgment*. There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked.

Application of this Rule is also dispositive of the Village's motion which was filed on June 24, 1998, more than three years after the entry on May 22, 1995, of the May 17, 1995 M&O (docket #234), and sets forth no controlling decision or matters the Court overlooked. The Court is aware that some other courts have permitted a motion for reconsideration to be brought after the ten day period, if there is adequate justification

8

for ignoring it. Algie v. RCA Global Commc'ns., Inc., 891 F. Supp. 875, 882 (S.D.N.Y. 1994). There is no justification for, nor will the interests of justice be served by ignoring the rule here.

I acknowledge consideration given to The Village Defendants' Memorandum in Response to the Government's Memorandum in Opposition to their Motion for Reconsideration. The Response is, in essence, a reiteration of the arguments initially made in their Motion for Reconsideration albeit made a bit more stridently. The government's Memorandum in Opposition supplemented by an extensive volume of Declarations and Exhibits fully and convincingly addresses their argument and together with the foregoing reasons dictates a denial of the Motion for Reconsideration.

## II. **The Village's Objections to Magistrate Judge Gold's Report and Recommendation**

The standard of review of a Magistrate Judge's Report and Recommendations to which an objection has been made is *de novo*. Having reviewed Magistrate Judge Gold's excellent Report, I place great reliance upon his thorough findings of fact and recommendations. United States v. Raddatz, 447 U.S. 667, 676 (1980); Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989).

Many of the objections made by the Village are bottomed upon the same arguments made in its motion for Reconsideration. Those are: (1) there is new evidence regarding the extent of the preselection of homeowners; (2) there is new evidence regarding the scope of Scully's authority; and (3) there is new law that municipalities are not subject to the remedies of the False Claims Act. Those arguments now advanced as objections are not persuasive, without merit and were addressed in the denial of their

motion for reconsideration.

The objections to Magistrate Judge Gold's R&R, which remain, are as follows:

A.  The Village argues that it is only liable under the False Claims Act for 44 false claims rather than for 2,121 false claims and a statutory forfeiture of $2,000 on each for a total of $4,242,000 as recommended by Magistrate Judge Gold.

After hearing extensive evidence, testimonial and documentary, he found as follows:

> The Section 235 housing program is structured in such a way that the mortgagee and HUD enter into a separate contract for assistance payments for each Section 235 homeowner. As part of its contract with HUD, the mortgagee must calculate the assistance payments for each individual mortgagor. Requests for assistance payments are made by the mortgagee on Form 93102. If the mortgagee holds more than one Section 235 mortgage, it submits requests for multiple assistance payments on a single Form 93102.

R&R at 23.

Thus, that single form 93102 includes multiple claims on behalf of multiple claimants and includes a claim upon HUD for each homeowner in the mortgagee's portfolio so that the number of claims in each form is equal to the total number of homeowners which the mortgagee is servicing in that month. Regardless of how many claims upon HUD are reflected in a single Form 93102, when each Section 235 homeowner makes a partial mortgage payment to the mortgagee each month, he is making a claim on his own behalf upon HUD's fiscal intermediary, the mortgagee, that HUD pay the remainder of his monthly mortgage payment. A claim upon the government's fiscal intermediary is actionable in its own right under the False Claims

Act. Each homeowner submits a monthly partial payment check only for himself and not for other homeowners serviced by the same mortgagee. In Island Park there were 2,121 separate partial payment checks written by the 44 preselected homeowners to the mortgagee. Thus, there were 2,121 claims filed.

The recommendation of Magistrate Judge Gold is compelled by his findings and by United States v. Bornstein, 423 U.S. 303, 313 (1976). The Court there held that "[t]he chief purpose of the (Act's civil penalties) was to provide for restitution to the government of money taken from it by fraud, and that the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole" (emphasis added). The Village's argument that the judgment recommended by Magistrate Judge Gold violates the Eighth Amendment Excessive Fines Clause is belied by Bornstein. The Second Circuit relying on Bornstein and on United States ex rel Marcus v. Hess, 317 U.S. 537, 551-52 (1943), expressly held that recovery under the False Claims Act was "not to be punitive but remedial, multiple damages being recoverable in order 'to make sure that the government would be made completely whole' . . . in light of the need 'to compensate the government for the costs, delays and inconvenience occasioned by the fraudulent claims.'" United States ex rel Stevens v. State of Vermont, 162 F.3d 195, 207 (2d Cir. 1998).

The Excessive Fines Clause limits the government's power to extract payment as punishment for some offenses. See United States v. Lippert, 148 F.3d 974, 977 (8th Cir. 1998); United States v. Bajakajian, 524 U.S. 321 (1998). Magistrate Judge Gold found, as a fact, however, that the False Claims Act judgment of $5,206,048 was entirely remedial. R&R at 35. The Village's Eighth Amendment objection is, therefore, without

11

merit and denied.

### B. The Village Objects to Magistrate Judge Gold's Double Damages Calculation

The Village claims that Magistrate Judge Gold's computation of damages under the False Claims Act is flawed.

In contrast to the statutory forfeiture provisions of the False Claims Act, the government must show actual damages before double damages may be awarded. In Island Park II, 888 F. Supp. 443, this Court held that the "appropriate measure of the damages sustained by the government" is equal to "[t]he limited funds that were diverted by the defendants fraudulent course of conduct [which] would otherwise have been available to HUD to further its goals."

Magistrate Judge Gold found that the government's actual damages was the mortgage assistance paid to the homeowners from March 22, 1984 through November 1995. The method he employed was to double the government's single damages (without interest) of $649,191 and then deduct recaptured payments of $324,194, resulting in a double damages calculation of $974,188. The Village's objection to that calculation is that it wrongly presumes that the mortgage assistance was irretrievably lost. It argues that the government's damages should be measured by concepts of time value, and recaptured funds should be deducted before the government doubles the actual damages.

In the Village's view, at the inception of their participation in the Section 235 program, 39 homeowners agreed to repay all or a substantial portion of the assistance they received under the program. Village Obj. Report at 40. The program regulations

refer to this obligation as "recapture of assistance payments." 42 C.F.R. § 235.12. Each homeowner's recapture obligation was secured by a second mortgage held by HUD on the Section 235 residence. The Village contends, in the light of these facts, that the true measure of the government's damages is the time value of the funds which HUD paid on behalf of the homeowners in Island Park until they were returned. The Village further contends that since recapture is the fulfillment of a contractual obligation undertaken in the normal course of the 235 program, recaptured funds should not be regarded as compensatory payments that are made to offset damages for wrongdoing. It follows, the Village asserts, that recaptured funds should be deducted before the government's actual damages are doubled.

That the Village is wrong is once again made clear by <u>Bornstein</u>, *supra.* at 314-15, where the Court wrote:

> Although there is nothing in the legislative history that specifically bears on the question of how to calculate double damages, past decisions of this Court have reflected a clear understanding that Congress intended the double-damages provision to play an important role in compensating the United States in cases where it has been defrauded . . . . For several different reasons, this make-whole purpose of the Act is best served by doubling the government's damages before any compensatory payments are deducted.

The Village's objection to Magistrate Gold's R&R on this issue is misplaced and denied.

### C. **The Village Objects to Magistrate Judge Gold's R&R Regarding Its Liability for CDBG Funds**

The government sought damages and penalties for the payment of CDBG funds pursuant to a contract between the Village and Nassau County for a project known as IP-

13

5. Pursuant to that contract, the Village agreed to undertake a Recreation Area Program using CDBG funds for a variety of improvements at sites adjacent to new § 235 Housing Units. Magistrate Judge Gold found that $30,000 of CDBG funds, which the government sought to recover, were spent by the Village on the CDBG IP-5 project in connection with its § 235 program. The Village objects to that finding contending that the government failed to prove that the funds spent were incident to the construction or improvement of the § 235 homes. Based on the evidence presented before Magistrate Judge Gold and his evaluation of that evidence, he found that the government did sustain its burden of proof as to the $30,000 for the IP-5 project. I have reviewed his finding in that regard on pages 42-44 of his Report and adopt them as sound, supported by the evidence presented and the Village's objection to that finding is denied.

### D. The Village Objects to the Injunctive Relief Recommended by Magistrate Judge Gold

In granting the government's motion for summary judgment, the Court also entered a declaratory judgment finding the Village Defendants liable for violating the Fair Housing Act and referred to Magistrate Judge Gold the task of preparing a Report and Recommendation regarding the propriety of granting equitable relief in addition to the monetary relief awarded.

The government urged the Court to enter orders that would (1) bar the Village Defendants from engaging in discrimination and requiring them to adopt a fair housing resolution and participate in fair housing education; (2) require the Village Defendants to retain an independent third party, presumably a not-for-profit entity with expertise in programs designed to remedy housing discrimination, to act as its housing

administrator, and (3) an order that would, in essence, compel the Village Defendants to recreate the § 235 housing program and administer it as it should have between 1979-1983.

Following extensive discovery permitted the parties and hearings conducted over a period of four days, Magistrate Judge Gold concluded "that the evidence presented at the hearing generally support granting injunctive relief of the first two types sought by the United States." He recommended that the third request be denied.

The Village's objection to that recommendation is that injunctive relief is not warranted because, it contends, the government has failed to establish "that there exists some cognizable danger of recurrent violation." In twenty pages, Magistrate Judge Gold responds to that general objection and to the Village's specific objections addressed to the explication of the recommended injunctive relief discussed in pages 49-63 of his R&R. The Court has carefully reviewed the reasons Magistrate Judge Gold marshaled in support of his recommendation which are compelling and which drive the Court to conclude that injunctive relief is warranted. His recommendation of such relief, as explicated in pages 49-63 is, therefore, adopted in its entirely and the Village's objection is denied.

### III. The Government's Objection to Magistrate Judge Gold's Report and Recommendation

The government's one objection to the R&R is that it does not recommend the issuance of an Order, requested by the government, that would compel the Village Defendants to recreate the § 235 housing program and remedy the result of the Village's preselection. Magistrate Judge Gold's discussion of the reasons for denying that

15

requested injunctive relief, discussed at pages 63-69 which the Court has carefully reviewed and duly considered, is similarly compelling and the government's objection is denied.

For all of the foregoing reasons, final judgment is hereby directed to be entered against The Village in the amount of $974,188, reflecting double the amount of mortgage subsidies paid by HUD pursuant to § 235, less the amount recaptured after the bar date; $4,240,000, reflecting a $2,000 statutory penalty for each of 2,121 mortgage subsidy payments made after the bar date; $163,346.88, reflecting double the amount of CDBG funds expended in connection with the § 235 program; and $14,000, reflecting a $2,000 penalty for each of the seven CDBG vouchers submitted by The Village, for a total damage award of $5,393,534.88. In addition, injunctive relief as recommended by Magistrate Gold and adopted as herein discussed is granted.

SO ORDERED.

Dated: Brooklyn, New York
October 22, 2008

_____
I. Leo Glasser